## Case No. 3,528.

### The CYNOSURE.

[7 Law Rep. 222.]

District Court, D. Massachusetts. July, 1844.

COLLISION—RULES OF NAVIGATION—LIGHTS.

1. When two vessels approach each other on opposite tacks, each being close-hauled, and it is doubtful which is to windward, the vessel on the starboard tack should keep on her course, and the vessel on the larboard tack should keep off.

2. Where, in such a case, from the evidence and the opinion of experts, it appeared that the Cynosure, the vessel on the larboard tack, should have seen the light of the Androdus, the vessel on the starboard tack, and have drawn an inference from the bearing of her light respecting her situation, in season to clear her by keeping off, and the Androdus kept on, but the Cynosure, by not keeping off, occasioned a collision; it was held, that the Cynosure was liable for the damages.

[Cited in Foster v. The Miranda, Case No. 4,-977.]

This was a libel in a case of collision, in which S. G. Nicoll was the libelant, and W. McClure the respondent. The principles upon which this case was decided were chiefly of a nautical character, but may be found important in many cases of collision; and in guiding masters and officers in the management of vessels which are approaching each other at sea.

The hermaphrodite brig Androdus, of New York, owned by Mr. Nicoll, was on a passage from Rochelle to New York, and on the night of the collision was sailing close-hauled upon the starboard tack, the wind being about north, and the vessel heading W. N. W. The Cynosure was bound from Surinam to Boston, and was close-hauled on the larboard tack, heading about E. N. E. The time of the collision was about three o'clock in the morning, the night clear, with starlight, but no moon, and a moderate breeze. It appeared from the testimony on both sides that the Androdus kept her course, hailing the other vessel to bear away, until a collision became inevitable, when she put her helm down, and came into the wind; and that the Cynosure also kept her course until a minute before the contact, when she also put her helm down, came into the wind and struck the Androdus on the lee side, her jib-boom running over the Androdus's lee rail, between the fore and main rigging.

The libelant's claim for damages was put

upon the ground that the Cynosure, being on the larboard tack, should have kept off, by the law of the ocean; and, that moreover, being the leeward-most (as appeared from the manner in which she struck the Androdus) she would have gone clear of her, under her stern, had she not luffed. On the part of the defence, it was admitted that no blame was to be attached to the Androdus, but it was contended that the Cynosure did the best she could under the circumstances, and that the collision was one of those inevitable accidents, consequent upon the uncertainties of winds, weather, and the darkness of night, which must be borne by the parties upon whom they fall.

The evidence on the part of the libelant was that the Cynosure was discovered at some distance; that a light was hung out on the Androdus's lee quarter; that when the Cynosure was found to be keeping her course, she was hailed several times through a trumpet to keep off, and put her helm up; that she kept on her course until within a few yards of the Androdus, when she luffed and struck the Androdus in the manner described.

On the part of the defence, the chief mate of the Cynosure testified that the light of the Androdus was seen twelve or fifteen minutes before the collision; that he could not see the vessel or make out which way she was standing; that before he could make out which way she was standing, a collision became inevitable, and he ordered the helm down, to bring the vessel into the wind and diminish the force of the shock. The man at the wheel testified substantially in the same manner, except that he made the time between the discovery of the light and the collision considerably less. The only other witness who was on deck before the Cynosure luffed, said that he saw the light, called out "Light ho!" that the mate came forward, looked over the bow, and gave the order to put the helm down; that he could not see the Androdus distinctly, so as to make out her course, until she was within a few lengths of them; and that there was not more than two minutes between the time of seeing the light and the collision.

The Cynosure is a vessel of about three hundred and fifty tons, and had topgallant sails set. The Androdus is a hermaphrodite brig of about one hundred and forty tons, had nothing above her foretopmast, having lost her topgallant mast a few days before.

On this evidence it was contended, that when the Androdus was first seen by the Cynosure a collision was inevitable, and it was too late to do anything else than come up into the wind and diminish the force of the shock.

In the case of Lowry v. The Portland, [Case No. 8,583], Benjamin Rich, William Sturgi and Francis Dewson, gave their opinions upon several nautical questions, one of which was relied upon in this cause, and was to this effect. When two vessels are approaching each other on opposite tacks, each sailing on the wind, and it is doubtful which is to windward, the vessel to the larboard tack should give way, and thus each pass to the right. And these gentlemen added to their opinions, "These rules are particularly intended to govern vessels approaching each other under circumstances that prevent their course and movements being readily ascertained with accuracy, for instance, in a dark night or dense fog."

In this case the following gentlemen were examined as experts: Benjamin Rich, James W. Sever and Edward H. Faucon, whose opinions upon the general principles governing such cases were substantially as follows:

The rule of the ocean is, that when two vessels approach each other on opposite tacks, each being on a wind, the vessel on the starboard tack keeps on, and the vessel on the larboard tack keeps off. Even if the latter is the weather-most, she attempts to go to windward of the other, at her peril. She may go about, and stand off on the other tack, but she must do this in season, at her peril.

When two vessels approach each other on opposite tacks, each bears on the lee bow of the other. If you are on the larboard tack, and see a light bearing a few points on your lee bow, if there is a tolerable breeze, the course of the other vessel can be determined immediately, without seeing the vessel itself, by the change in the bearing of the light. For if the other vessel is going free, the light will change its bearing instantly and rapidly by passing astern. If the light is from a stationary object, you will leave it astern, though less rapidly. If the light does not change its bearings, and approaches you, it must be from a vessel sailing by the wind on the other tack. In such case, the duty of the vessel on the larboard tack is to keep off, at once. Being cross-examined as to whether the vessel on the larboard tack ought to keep off if the light bore as large as four points on the bow, the witnesses said that four points would be wide for a vessel to come in contact, but that they should feel bound to keep off even in that case, for it is not easy to ascertain the exact number of points without a compass, and because the coming to and falling off of vessels sailing by the wind in a moderate breeze, often varies the apparent bearings a little.

Since the vessel on the starboard tack has a right to keep on, if she finds at last that a collision is inevitable, she has only to come into the wind. So, the vessel on the larboard tack, if she does not discover the other vessel until a collision is inevitable, may come into the wind; but this would only be when she was so much to windward that she could not clear the other vessel by keeping off. If the vessel on the larboard tack luffs before she strikes the other, and yet after coming into the wind strikes her on the lee side nearly amidships, we should say that if she

had not luffed she would have gone clear, passing under the stern. Certainly she would, by keeping off a point.

After a hearing, the court desired further information upon certain points, and it was agreed that the evidence should be submitted to two experts, who should answer questions propounded by the court upon those points. The gentlemen agreed upon were Messrs. Benjamin Rich and William Sturgis. Subsequently Mr. John S. Sleeper was substituted for Mr. Sturgis, who was ill. Their answers were as follows:

To question the first. "It appears that when the Androdus was first seen from the Cynosure, she was on the lee bow, the most unfavorable position for discovering a light or other object. It is usual on board vessels at sea, when sailing on a wind, to keep a sharp look-out to windward and ahead, but little danger being apprehended from vessels coming up under the lee. Therefore, allowing as vigilant a look-out to have been kept on board the Cynosure as is customary at sea, the light on board the Androdus, unless it was a very bright one, might not have been seen until the vessels were within a quarter of a mile of each other, without rendering the watch on deck liable to the charge of neglecting their duty."

To question the second, they answered, that not more than one minute would be necessary to determine that the Androdus was steering close-hauled on the starboard tack. This was predicated upon the fact that the Androdus was coming at such an angle that a considerable portion of her broadside could be seen, and upon the facts as to the bearings of the light, as testified to by the other gentlemen.

To question the third. "This question supposes the vessels to be approaching each other on opposite tacks, and the Androdus to be crossing the bow of the Cynosure, having clearly passed one third of her length across the bow of that vessel. The Cynosure would then be heading for the after part of the fore chains of the Androdus, in a diagonal direction. If the vessels were in this position when only a few lengths from other, it is plain that the only way to prevent a concussion on the part of the Cynosure would be to put the helm hard up. If the Cynosure would answer her helm, she would rapidly fall off, and the vessels come side by side, in parallel directions, heading opposite ways, and might come in contact, rubbing past each other without sustaining much injury. If, when in the position first stated, and the vessels within a few lengths of each other, the helm of the Cynosure should be put down, it would exhibit a deficiency of nautical skill or presence of mind, as in that case the vessels would inevitably come in dangerous contact. If the vessels, at the time, were a quarter of a mile apart, or perhaps even less, and the Cynosure would work quick without ranging ahead greatly in stays, she might

have gone about without coming in contact with the Androdus; but even then, it would have been with plenty of sea room, more safe and consequently advisable, to have put the helm up and shivered the after yards."

R. H. Dana, Jr., for libelant.

F. C. Loring, for respondent.

THE COURT said that upon the evidence in the case, it was satisfied that each vessel was sailing by the wind, the Androdus on the starboard and the Cynosure on the larboard tack; that the Androdus showed a light, kept her course, and when a collision was inevitable, luffed into the wind. No blame was attributable to her. It would seem that the Cynosure either did see or ought to have seen the light of the Androdus in sufficient season to keep off. From the opinions of the nautical gentlemen, it would seem that the Androdus was from one third to one half her length to windward of the Cynosure, and could have cleared her by keeping off a little; perhaps, by simply keeping her course without luffing. His honor thought it proved that the Cynosure ought to have known the course and movements of the Androdus, either by seeing the vessel, or by inferences which, as all the experts say, nautical men would draw at once from the bearing of the light.

Decree for the libelant, for damages and costs.